IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>             Plaintiff,<br><br>  v.<br><br>Subscriber 89133, *et al.*,<br><br>             Defendant. | Civil Action No.<br>4:18-cv-02488<br><br>Hon. Lynn N. Hughes<br>United States District Judge |

PAUL S. BEIK (Tx. Bar No. 24054444)
S.D. Tex. ID No. 642213
BEIK LAW FIRM, PLLC
Attorneys for the Plaintiff
8100 Washington Ave., Suite 1000
Houston, TX 77007
Tel: 713-869-6975
Fax: 713-868-2262
E-mail: paul@beiklaw.com

ERIC C. GRIMM (Tx. Bar No. 00787596)
S.D. Tex. ID No. 33793
ERIC C. GRIMM, PLLC
Attorneys for Subscriber 89133
3919 Essex Ln. Unit 210
Houston, TX 77027
Tel: (734) 717-4900
Fax: (888) 502-1291
Email: ecgrimm@umich.edu

**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES
AND CROSS-MOTION TO DISMISS UNDER RULE 12(b)(6)**

      Defendant, Subscriber 89133, Carlo Poropat, by and through his attorney Eric C. Grimm, respectfully responds to, and opposes, Malibu Media's Motion to Strike Affirmative Defenses.

      Malibu Media has never sued anyone in this case other than the <u>subscriber</u> for a particular cable account. Malibu has sued the **<u>wrong defendant</u>**. Poropat never infringed any Malibu work.

      Defendant Poropat, accordingly, also moves to dismiss Plaintiff's Second Amended Complaint, under Rule 12(b)(6). Malibu already has had enough opportunities to allege sufficient facts; further amendments by Malibu would be futile, and the dismissal should be with prejudice.

      The Affirmative Defenses make no difference, and no reason exists to invest time and resources fighting about them, unless Malibu first has a factual basis sufficient to sue **<u>this</u>**

-1-

Opposition to Motion to Strike, *in*
Malibu Media, LLC v. Doe, C.A. No.
4:18 cv 02488 (S.D. Tx.).

Defendant. Accordingly, Defendant respectfully suggests the best course to proceed is in two steps.

First is to subject Malibu's Third Amended Complaint to scrutiny under Rule 12(b)(6), <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), and <u>Ashcroft v. Iqbal</u>, 565 U.S. 662, 679 (2009).

The key issue is whether Malibu has any factual basis to assert a plausible claim **personally** against **this** Defendant. Defendant respectfully suggests there's no factual basis whatsoever for this, specific, named Defendant, to have been sued <u>personally</u>. And Malibu knows all about how laughably little it has, factually, to subject this Defendant <u>personally</u> to the burdens of litigation.

Malibu has been given chance after chance by courts all over the country – since roughly 2012 – to do better than simply pasting the name of a subscriber, in a word processor, where a number previously appeared in *ex parte* identity discovery filings. And Malibu brazenly has kept making the same error over, and over, and over again, without changing its *modus operandi*. Some courts have, of course, expressed reasonable criticism of Malibu and its litigation behavior. <u>See, e.g.</u>, Order to Show Cause (May 26, 2015) (ECF Entry No. 17), *in* <u>Malibu Media v. Downs</u>, C.A. No. 1:14-cv-00707-TSB (S.D. Ohio *filed* Sept 5, 2014) (Malibu dismissed its case about two weeks after the judge's show-cause order was issued). But, for the most part, the attitude of many courts has been to overlook some of Malibu's worst serial abuses of court processes.

That is, until 2018, when the Ninth Circuit finally put its foot down about copyright trolling. <u>Cobbler Nevada, LLC v. Gonzales</u>, 901 F.3d 1142, 1142, 1146 (9th Cir. 2018).

It is our hope (and perhaps an appeal by Malibu from a ruling dismissing Malibu's lawsuit on the face of the pleadings is just the vehicle to do it) that the Fifth Circuit will also adopt the legal rule from <u>Cobbler</u>, as a reasonable amplification of the solid work the Fifth Circuit already did to curtail trolling in <u>Mick Haig Productions E.K. v. Does 1-670</u>, 687 F.3d 649 (5th Cir. 2012).

Sooner or later, this Court needs to inform Malibu that it has had enough gentle warnings.

This pattern of filing shotgun "shakedown" litigation, based on the flimsiest of allegations, and then attempting to extort settlements from innocent cable subscribers, needs to be halted. And Malibu needs to be required to pay the innocent subscriber's defense costs. Not just in this case.

The only support Malibu's has, here, is AT&T's identification of Carlo Poropat, as the person who pays the bills for this cable account. Courts, across the country, have recognized the subscriber's identity, alone, is **insufficient** to accuse the subscriber of also being the infringer.

Due to the risk of "false positives," the mere allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement. Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1142, 1146 (9th Cir. 2018) ("In this copyright action, we consider whether a bare allegation that a defendant is the registered subscriber of an Internet Protocol ("IP") address associated with infringing activity is sufficient to state a claim for direct or contributory infringement. We conclude that it is not."); see also AF Holdings LLC v. Rogers, No. 12cv1519 BTM(BLM), 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement."); PTG Nevada, LLC v. Chan, C.A. No. 16-cv-01621, slip op. at 2-3 (N. D. Ill. Jan 17, 2017) (collecting decisions); Elf-Man, LLC v. Cariveau, No. C13-0507RSL, 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) (dismissing direct infringement claim where plaintiff did not "provide specific facts tying the named defendant to the infringing conduct" and instead merely alleged that the defendant's IP address "was observed infringing Plaintiff's motion picture"); AF Holdings LLC v. Doe, 2013 WL 97755, at *8 (N.D. Cal. Jan. 7, 2013).

Here, somebody else did the download(s), if any downloads even happened. Poropat did not do any of the alleged downloads.

Moreover, Malibu's "investigation" into the identity of who to sue, if anyone, was so inadequate and unreasonable, under the circumstances, that Malibu ought to pay the full costs of the innocent subscriber's legal defense under Rule 11 of the FEDERAL RULES OF CIVIL PROCEDURE.

So, that's part one. Determine whether Malibu actually has anything beyond the knowingly false and deceptive presupposition that the IP address assigned to Poropat as a subscriber, serves as a perfect surrogate for Poropat himself. The second step we propose is, if and only if Plaintiff's complaint survives Rule 12(b)(6), then the Court should allow discovery in a reciprocal manner.

The purpose of affirmative defenses is to provide fair notice to the Plaintiff, what subjects may become fair game for discovery in a contested case. The "fair notice" standard has been more than satisfied by all the Affirmative Defenses, in this case.

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" Cortina v. Goya Foods, Inc., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

"When ruling on a motion to strike," this court "'must view the pleading under attack in the light most favorable to the pleader.'" Id. (citing RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010), *rev'd on other grounds*, 510 U.S. 517 (1994)). Accordingly, "[a] defense may be struck if it fails to provide 'fair notice' of the basis of the defense." Qarbon.com Inc. v. eHelp Corp., 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004); see also Wyshak v. City Nat'l Bank, 607 F.2d 824, 826 (9th Cir. 1979).

-4-

Opposition to Motion to Strike, *in*
Malibu Media, LLC v. Doe, C.A. No.
4:18 cv 02488 (S.D. Tx.).

In this case, the Affirmative Defenses are, in large measure but not exclusively, the product of a semi-open-source, loosely coordinated, effort by multiple attorneys all over the country (as well as some non-attorney volunteers who publish Websites that act as "clearinghouses" for information), hoping to interject at least a bit of due process and the Rule of Law, into the still largely-lawless frontier of copyright trolling.  This network has been effective bring down, for instance, the notorious trolls John Steele and Paul Hansmeier – who have now been prosecuted for their nationwide fraudulent trolling enterprise.

No one defendant in a "troll" copyright case such as this one, has the resources fully to investigate the peculiar business practices of Guardaley[1] (or Guardaley operating under one of several corporate aliases), a European company that has become notorious for feeding troll litigation to many trolls, all solely *via* the one defendant's own efforts – and especially not enough resources to do so at the stage of pleading Affirmative Defenses, prior to any formal discovery.

Malibu is afraid of having real discovery (as occurred in the Prenda Law / Steele cases)[2] occur, and thereby exposing the ugly underbelly of the Malibu Media litigation mill.

That's why Malibu is so desperate to prevent discovery from even occurring, by attempting to attack pleadings (that obviously provide sufficient fair notice), before discovery into the real facts

---

[1] See Mike Masnick, *International Men Of Mystery: How Discredited German 'Anti-Piracy' Company May Secretly Be Behind Malibu Media's Copyright Trollery*, TECHDIRT (June 4, 2014), < https://www.techdirt.com/articles/20140603/18021127448/international-men-mystery-how-discredited-german-anti-piracy-company-may-secretly-be-behind-malibu-medias-copyright-trollery.html >.

[2] See Joe Mullin, It's finally over: Mastermind behind Prenda Law porn trolls pleads guilty, TECHDIRT (Mar. 6, 2017), < https://arstechnica.com/tech-policy/2017/03/prenda-laws-john-steele-pleads-guilty-to-fraud-money-laundering/ >.

-5-

Opposition to Motion to Strike, *in* Malibu Media, LLC v. Doe, C.A. No. 4:18 cv 02488 (S.D. Tx.).

can commence. Defendant respectfully urges the Court to DENY Malibu's "Motion to Strike" and to allow discovery to commence, into a multitude of Malibu's (and Guardaley's and other participants' in the Malibu ecosystem) questionable business and litigation practices. No trial can possibly be called a fair trial, unless Defendant is permitted to conduct discovery at least as sweeping as the Plaintiff is likely to propose, if Plaintiff's case is not dismissed under Rule 12(b)(6).

This honorable Court, when evaluating Defendant's Rule 12(b)(6) motion, may also be interested in the question whether Poropat can personally be held vicariously liable for an unknown (and possibly unidentifiable) third party's copyright infringement, that just happens to enlist Poropat's IP address for some of the third party's BitTorrent (or TOR) traffic.

Back in 2012, a rather flamboyant lawyer named Marc Randazza,[3] started peddling a "negligence" theory to courts, on behalf of some of his specialty-market pornography clients, in an effort to manufacture vicarious liability for cable subscribers. His pet theory got shot down quite spectacularly by Judge Kaplan of the Southern District of New York, among others.[4] See Liberty

---

[3]Attorney Randazza subsequently has gained some notoriety for himself, representing controversial Austin, Texas broadcaster Alex Jones, who has been sued by families of several Sandy Hook shooting victims. The recent interview of Randazza, by NPR's ON THE MEDIA, is worthy of a thorough listen, if the Court has the time.

[4]The Electronic Frontier Foundation publishes a helpful guide, summarizing the legal standards that apply to operators of **open** Wi-Fi nodes, and whether they need to be afraid of being held liable for infringing activities of third-parties, carried out without their knowledge. See ELECTRONIC FRONTIER FOUNDATION, OPEN WI-FI AND COPYRIGHT: A PRIMER FOR NETWORK OPERATORS (2014), <
https://www.eff.org/files/2014/05/23/copyright.wifi_.primer.pdf >.
  To be clear, Carlo Poropat is not in any way accused of operating a totally open wi-fi node. Rather, this is a case in which the network in the Poropat household (two of them actually, one supplied by AT&T with an AT&T-supplied password; then a private router "inside" the AT&T network, with a different, customer-supplied password that changed over time), was/were protected with passwords, and the passwords were exchanged among multiple teenagers and other visitors to the household, often without Poropat's personal involvement. It is likely to prove impossible, practically speaking, to pin down any specific individual or individuals to

-6-

Opposition to Motion to Strike, *in* Malibu Media, LLC v. Doe, C.A. No. 4:18 cv 02488 (S.D. Tx.).

Media Holdings v. Tabora, 2012 WL 2711381 (S.D.N.Y July 9, 2012);  AF Holdings, LLC v. Doe, 2012 WL 3835102 (N.D. Cal., Sept. 4, 2012); see also Patrick Collins, Inc. v. Doe, 288 F.R.D. 233 (E.D.N.Y. 2012).  Footnote 4 of this filing provides a citation to a long memo by the Electronic Frontier Foundation, that details a whole variety of legal doctrines governing whether the operator of a secured or unsecured wireless network, can be held liable vicariously for third party conduct occurring via such a network.  Suffice it to say, Malibu does not allege, and cannot allege, sufficient facts to support going after Poropat on any vicarious liability theory.  The case should be dismissed.

February 6, 2019                                              Respectfully submitted,

       /s/ Eric C. Grimm
ERIC C. GRIMM (Tx. Bar No. 00787596)
S.D. Tex. ID No. 33793
ERIC C. GRIMM, PLLC
Attorneys for Subscriber 89133
3919 Essex Ln. Unit 210
Houston, TX 77027
Tel: (734) 717-4900
Fax: (888) 502-1291
Email: ecgrimm@umich.edu

---

accuse of copyright infringement.  Poropat's minor children, when questioned, emphatically deny any personal involvement in using BitTorrent for anything, or using TOR.

-7-

Opposition to Motion to Strike, in Malibu Media, LLC v. Doe, C.A. No. 4:18 cv 02488 (S.D. Tx.).

## CERTIFICATE OF SERVICE

I certify that the foregoing Opposition to Motion to Strike, and Cross-Motion to Dismiss, was filed through the Court's ECF system on February 6, 2019, and that it is being automatically served on all counsel of record through the ECF system.

February 6, 2019                                          Respectfully submitted,

                                                                                                         /s/ Eric C. Grimm
                                                                               ERIC C. GRIMM (Tx. Bar No. 00787596)
                                                                               S.D. Tex. ID No. 33793
                                                                               ERIC C. GRIMM, PLLC
                                                                               Attorneys for Subscriber 89133
                                                                               3919 Essex Ln. Unit 210
                                                                               Houston, TX 77027
                                                                               Tel: (734) 717-4900
                                                                               Fax: (888) 502-1291
                                                                               Email: ecgrimm@umich.edu